BARTHOLOMEW v. BORDEN'S CONDENSED MILK CO.

(District Court, N. D. New York. April 28, 1912.)

MASTER AND SERVANT (§§ 286, 288*)—INJURIES TO SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—QUESTION FOR JURY.

In an action for injuries to a servant, by being caught on the end of a revolving shaft hung from the ceiling of a room, as he was cleaning the ceiling, evidence *held* to require submission of the question of defendant's negligence in operating the shaft without warning while plaintiff was so engaged, and the question of plaintiff's assumed risk, to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1068–1088; Dec. Dig. §§ 286, 288.*]

At Law. Action by Charles M. Bartholomew against Borden's Condensed Milk Company. Verdict for plaintiff. On motion to set aside the verdict and for a new trial, on exceptions that the verdict is contrary to and unsupported by the evidence and the law. Denied.

W. E. Young, of Hudson Falls, N. Y., and Richard O. Bassett, of Albany, N. Y., for plaintiff.

Thomas M. Rowlette, of New York City, for defendant.

RAY, District Judge. At Ft. Ann, N. Y., the defendant corporation, Borden's Condensed Milk Company, has a factory where it receives and bottles milk for transportation and sale. The plaintiff, Charles M. Bartholomew, had been in the employ of said company at this factory for about three years, doing "all-around work" washing cans, helping wash bottles, helping put up milk, and putting caps on bottles. There was an engine room, a bottling and washing room, and then an ice-crushing room, which was about 12 feet by 15 and about 20 or 22 feet from floor to ceiling. This room had but one window, some 18 by 24 inches, located near the ceiling, about 18 feet from the floor. A shaft about 2½ inches in diameter runs from the engine room through the bottling and bottle-washing room into this ice-crushing room and is supported by hangers about 2 feet from the ceiling. It projects some distance into the ice-crushing room, but does not extend across it. In this ice-crushing room was an ice crusher, connected with the shaft by belts and pulleys, and in the bottle-washing room was a machine for washing bottles, connected with the shaft in the

---

†For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

same way. These machines in both rooms were connected with the shaft by throwing the belts off and on, so that the washing machine could be run without setting the crushing machine in motion, and vice versa. The engine and shaft, when in motion, made little or no noise.

There was strong evidence tending to show that every afternoon about 1 p. m. the machinery was started up so as to wash bottles in this washing room. It was contended by the defendant that this made the plaintiff fully acquainted with the fact that at that hour or soon thereafter this shaft would be put in rapid motion, and that he was bound to govern himself accordingly. The plaintiff contended, and gave some evidence tending to show, that this machinery was not started with regularity, but some days at one hour and on other days at another hour.

On the 11th day of November, 1911, the plaintiff was instructed to clean the ceiling in this ice-crushing room. He requested that a staging be put up from which to do the work; but this was refused, and he was told to use a ladder, and the foreman placed one with its foot resting against the crusher, so it would not slip, and its upper end resting against the walls of the room. He was provided with a brush attached to a handle, and also a sponge, with which to do the cleaning. When up on the ladder at the side of the room towards which the end of the shaft projected, his back would be to the end of the shaft. He wore a shirt and sweater, with trousers and shoes. I think the evidence shows Bartholomew had changed the location of the ladder from time to time, as most of the wall and ceiling had been cleaned at the time of the accident. The evidence is not clear or conclusive as to the time when the shaft was put in motion on the afternoon of the day of the accident, or as to the time when the accident happened. It appears with some clearness that neither the starting nor the running of the shaft would cause much noise, if any. The shaft may have been in motion for some time without the fact being noticed by one engaged as Bartholomew was in this ice room.

Frank Morris, a witness for the defendant, the foreman in the factory, testified that he put the plaintiff at work in this ice room a little after 1 o'clock p. m., and told him to wash the sides and ceiling of the room, and that he placed the ladder. He also testified that the shaft was not running when he put plaintiff at work, and that he commenced washing bottles and put the shaft in motion about five minutes thereafter. He puts the accident at about 3 p. m. He says Bartholomew asked for a platform from which to do the work, but was told to use the ladder.

The jury was instructed that, if the shaft was in motion when plaintiff was put to work cleaning the room, the plaintiff could not recover; that to enable him to recover the jury must find the shaft was not in motion at that time, but was put in motion thereafter without notice to the plaintiff; and that they must also find that it was the duty of the defendant company, in the exercise of reasonable care, to have apprehended and foreseen that a person at work in the ice-crushing room, as was Bartholomew, would be liable to come in contact with the shaft after it was put in motion and receive injury, and with that knowledge

to have given him notice that the machinery was to be put in motion. The jury was told:

"If you believe and find from this evidence that the defendant in the exercise of due care should have given notice—that is, that a reasonably prudent and careful man would have apprehended and foreseen that the plaintiff might be or would be in proximity to that shaft, and so be caught and injured when it started up—why, then, of course, it was its duty to give him some notice before starting it up; otherwise, not."

The jury was also instructed:

"The defendant here cannot be held responsible for the injury because it did not warn the plaintiff of the danger, if you find that the plaintiff himself knew and understood that shaft was liable to start up at any time, and appreciated it and had it in mind, because in that event he would be bound to exercise his senses and to avoid coming in contact with the shaft. The plaintiff here assumed the risk of those dangers seen and known and appreciated by him, or which, in the exercise of reasonable care, he should have seen and appreciated, considering his intelligence and experience there in this plant and elsewhere, if any. If the condition was such as to require judgment not possessed by the ordinary observer or servant to realize the danger or hazard, why then, of course, the risk was not assumed—such a risk would not be assumed. The negligence of this defendant cannot be assumed or presumed by you, gentlemen, from the mere happening of the accident and the consequent injury. It must be proved and established from all the facts and circumstances in the case."

I think the plaintiff made a case for the jury; not a very strong one, but one where it would have been error to refuse to submit the question to the jury. I think the charge was as favorable to the defendant as the facts and law warranted. It is not a case where the court can set aside the verdict as contrary to or unsupported by the evidence. I find no error in the admission or rejection of evidence prejudicial to the defendant, or in the charge.

The verdict is not large. There was much to indicate that the injuries were exaggerated; but it was for the jury, on all the evidence, after seeing and hearing the plaintiff and other witnesses who spoke on the subject. The amount of the verdict does not indicate passion, prejudice, or bias.

Both plaintiff and his wife testified to quite serious injuries. The plaintiff claimed he was injured in the back and internally, so he passed blood. He also claims he has suffered pain down to the time of the trial, over a year, and lost weight, etc. Mr. Westcott testified that plaintiff appeared pale and thin and puny along in December, etc.

After a reading of the evidence, I am of the opinion the court is not justified in interfering with the verdict.

The motion for a new trial is therefore denied.